Puzhen Life USA, LLC, Our next case is ESIP Series 2 v. Puzhen Life USA, 2019-16-59. Mr. Hill, when you are ready, and you're going to split your argument? I'm sorry? Are you splitting your argument? Yes, I am. Right. So you're going to take seven minutes. You've got 12, and you'll take seven minutes before the yellow light goes on. May it please the Court, Gordon Hill representing the appellant, ESIP Series 2. The Board's final written decision should be reversed because Puzhen's IPR petition did not meet its evidentiary burden. Puzhen's IPR petition did not identify... Do we have authority to review this particular determination, the 312 determination? Yes, Your Honor, I think we do. In this instance, ESIP is seeking review of the Board's actions that acted outside of its statutory authority. We have never ruled that we have authority to review a real party of interest determination that's made pursuant to 312, correct? I think that's correct, Your Honor. And why would we? That's part of the institution decision, which is not reviewable. When we reviewed real party of interest in Y51, it's because it affected the final decision and whether the Board was properly acting within the one-year time limit. But you're not suggesting that a finding of these other two parties would implicate a time limit, are you? Yes, we are. Where in your brief did you argue that? I'm not sure of the page, but it talks about how this brief... and that they were sued more than one year before the petition was filed. Yes. Where? To the Board. Where to us or the Board? I don't remember seeing any of this. I mean, if this is the case, this is a clear Y51 decision. But I didn't see any of that argument. The Board finds that doTERRA was one of the parties that was also a co-defendant in the underlying district court case. So they had been served with a complaint. Can you point to me your blue brief where you say the Board's decision should not have been instituted because one of the real parties in interest was sued more than a year before the petition was filed? No, it does not say that in the brief. Well, then haven't you waived that argument? No, it's not an argument about the implication of the one-year bar because... Are you arguing a Y51 case or are you arguing a separate case that the Board's initial institution decision of who is a real party in interest, whether or not it implicates a time bar, is still reviewable? Is it the former, the time bar, or is it just the latter? Well, it would implicate the time bar if the parties are named. But in this case, the correction was never made. So the implication for the time bar never really came up at the Board level. You didn't argue that on appeal, that the proper party in interest was this other party and they had been sued more than a year in advance. That would make, under Y51, the Board's final decision in excess of its authority. But all you're asking us to do is review the institution decision in isolation from the final decision, which Cuozo said we can't do. Well, Cuozo does allow for review of Board decisions that act outside the statutory authority. That's what's reviewable by us, the final Board decision. The initial Board decision is not appealable. So only things that merge into the final Board decision are appealable. The Supreme Court said that things that were related to the institution decision with respect to being related on the merits would be considered non-reviewable. They specifically pulled out Section 312A3 because that had to do with the merits of the case, and so they decided that was not reviewable. But, of course, the merits are actually what is reviewable on appeal. Oh, absolutely, yes. The merits are reviewable, but in Cuozo's speed... So you're saying that appeal bar only applies to basically the Board's initial decision on the merits, but not other preliminary decisions that have no effect on the final decision? Yes, that is correct. Where in Cuozo does it say that? In Cuozo, it specifically points out that the reason the Supreme Court said that issues under 314A3 were not reviewable is because they were closely related to the final decision. They described it as a mine run with respect to the idea of the final decision, but they left open the possibility. It doesn't say it's reviewable. It does say that that's still something that can be considered. Why wouldn't this just be a typical mine run type issue, going to the sufficiency of the petition? Well, it does go to the sufficiency of the petition because it's based on the plain statutory language of 312. All you're doing is naming a real part of an interest, and what's the difference there? I mean, it would make a difference if it was related back to 315B issue. In this case, it wasn't, and the Board said that there were no claims being made that 315B was an issue. So you don't have that, and all you're left with is 312, and that just goes to whether you fill in the different blanks or not. Well, the initial sufficiency is precisely what is covered by the appeal bar. What's appealable to us is the final written decision on the IPR, and unless some of those decisions from that initial decision merge into the final decision, as they do with the time bar, like we said in Wi-Fi 1, then initial preliminary decisions that don't affect the final decision are part of that preliminary institution decision that the statute says is unreviewable. Can you explain to me how, if we disagree with the Board and find these people, real party of interest, it would change the results here? It would show that there was a statutory violation at the stage of instituting this decision. What statute? 312A2. But that's a part of the preliminary decision. It's not part of the final decision. It's not part of the final decision, but it's still... And that's the point of the appeal bar, is that you don't get to upset the final decision for technical violations in the preliminary institution decision. Only violations that go to the final decision and affect it are reviewable, as in the time bar in Wi-Fi 1. I respectfully disagree that that's what Cuozo's speed says. Well, you can argue that all you want. Cuozo doesn't say anything like that. The decision in Cuozo's speed rests on the idea... Essentially, all the appeal bar does in Cuozo is deny review of that initial assessment of whether or not it's likely unpatentable or not in closely related questions. But Cuozo rejected that argument and said it is much broader than that. So do you want... You're into your rebuttal. Do you want to talk about the merits? Yes, please. I do. And then you want to save three minutes. Well, I will give Dr. Pate some time. Thank you. Your Honors, may it please the Court, I'm Jack Pate, representing ESIT. The aperture 99 in the CV patent 418, cited as prior art, is not a separator. And the final written decision got that wrong. In the appendix 19 and 20, 25 through 28, they got it wrong. They quoted three times, misquoted every time and changed the meaning of CV by the things they left out. Now, second of all, the decision provided no rationale for why you should dismantle Cronenberg's device. Literally, every part taken apart, modifying each component, leaving out some of the components, and then substituting a modified subset of Cronenberg's components into the aperture of CV. Well, to take a second reference as part of an obvious misprojection doesn't mean you incorporate it totally. Cronenberg does talk about spiral arrangements and oculate passages, and that's all that was missing from the first CV patent. Is that right? No, that's not all that was missing from the CV patent. First of all, the aperture is not a separator. And so they left the whole separator 150 in CV 418 patent. They left it all there in the patent in question. The whole separator 150 is there. What happened was the board ignored column 10. This is at appendix, I think, 490, 495, 496. That shows you inside the CV reference, the 418. They ignored column 10, and they misquoted in column 8 and 9 so that you, in fact, they put an ellipsis in place of the number 100. And the number 100, go looking for 100 opening. It's not the aperture 99. It's the top opening in the overall housing of the 16, of the atomizer 16. And when you look for what the wall 100 is, it's the cylindrical wall inside that whole separator. So all the discussion about smashing and crashing of droplets, comminuting to smaller sizes, and then only the cloud of finest droplets going out. That is ignored. And in column 10, CV numbers the separator 150. And the board got that wrong. So they put it in the wrong place, substituted the wrong thing. And they're using the arcuate channel. But CV has to have a whole plate that caps over the top of that arcuate channel, which is not shown. And by the way, okay, I'm out of time. But none of the other references even matter. They all teach mixing and spraying. And everything that is, everything that twists is not a separator. None of that other prior art matters. Thank you, counsel. We'll hear from Mr. Miller. Thank you, Your Honor. May it please the Court. Can you clear up something factually for me? Absolutely. Is there any argument to the board below that you shouldn't institute this petition because one of the real parties in interest was sued more than a year before the petition was filed? No. And in fact, this is not a YFI-1 case at all. There's two alleged missing real parties in interest. doTERRA has the exact same service date as Pugen. So if they had been included, it would have been no problem, no 315 one-year bar issue. The parent company, Pugen Hong Kong, has never been served or sued. So there's no one-year bar with them. So this is not a one-year bar case at all. I think what counsel was trying to convey as a one-year bar case is if you find that we didn't put all the real parties in interest there, then you terminate. We'll have to refile. And now there's a one-year bar because we have to refile. I think that's what he was trying to characterize as a one-year bar. That's not YFI-1. That is not YFI-1. But YFI-1 is the ultimate decision when the merits was in error because it should never have been instituted because of the time bar. And therefore, the agency was without authority to issue the decision at all in the first instance. And that is the only situation where the question of real parties in interest is reviewable by this court is if it's tied to section 315. If all you are arguing is what Cuozzo characterizes as a minor statutory technicality in the institution phase, section 314 bars appeal. And this court even suggested in its YFI-1 holding that a violation of section 312a2 is much different than an alleged violation of 315. And the dissent agreed that an argument of lacking all the real parties in interest in 312 at the initiation stage, nobody thinks that would be appealable. And it's not appealable. The main argument of appellants in this case is barred by 314, and it's not appealable. I assume you have the same argument to the other point on this that the petition didn't show a likelihood of success. That that's equally an institution decision that's barred by the appeal bar. Absolutely. Which reviewable is the final decision on actual success or not. Correct. And what's also important to understand is in Cuozzo. The Cuozzo court also said that a section 312 type of procedural institution issue is also not appealable simply because you're trying to appeal it through the context of the final decision. It expressly says we don't accept that interpretation of 314. So the only argument they're making about real parties in interest here is one where they're trying to say the institution decision was wrong. It's a direct attack on the institution decision, which is a direct violation of Section 314's appeal bar. Why don't you address the merits? On the merits. I'll go to the argument that Mr. Pate first started with, and that is the aperture argument. Now, what they claim in that argument is they want to say that the hole that is in the separator plate, there is a structure called the separator plate. It performs a function of separating. And they want to claim that the hole in the plate is an independent structure, and we had to show that the hole independently causes separation. And it's just an illogical argument. It's like saying that the void in a donut exists independent of the donut. What the SEVI patent teaches is that the separator plate includes an aperture. So the plate with the aperture is all one structure, and that structure is expressly taught in SEVI to cause separation. How? It teaches in SEVI in Column 8. At the bottom of Column 8, it causes a rapid turn in the flow, and the larger droplets of water cannot make the rapid turn to get to the exit. Where's the exit? The aperture. If there's no aperture in that plate, there's no exit, and no separation is happening because everything is staying inside that chamber. So the aperture is critical to separation. You cause rapid turning. You cause collisions with the plate while the smaller particles make it out. So that's what SEVI teaches. And any person of skill in the art, after reading SEVI, would know, I guess all we have to do is find more ways to cause rapid changes in direction with potential wall collisions. And where is an arcuate channel formed through the wall? The arcuate channel is taught in Cronenberg. And what SEVI has is a wall with an aperture formed through it. And what Cronenberg teaches is that if you pass a mist in an arcuate channel or a spiral channel or a helix, it will cause more separation. And so what you have is a teaching that says, hey, instead of just a hole in the wall, why don't we replace the hole with an arcuate channel so that after it hits the wall and goes to the exit, the exit itself is still causing rapid changes in direction. There was substantial evidence before the board to show that that is a logical combination. And the most compelling evidence, ironically, came from Appellant's own expert, Dr. Bell, in his deposition testimony. He was asked, if I took, if I wanted to place an arcuate channel or incorporate this concept of a spiral channel into SEVI, would it be reasonable or logical to put it where the hole is in SEVI? His response was, that's the first place you would put it. And that would make sense. So we have two experts saying that if anyone's going to incorporate the prior art teachings in Cronenberg or Giraud of spiraling mist to improve separation, decrease the average particle size in the mist, the first place you would look, the most logical place you would incorporate that concept is right where the aperture is in SEVI. And then you would have a wall with an arcuate channel through it. We don't need to get the wall from other references. It's already in SEVI. We just need the arcuate channel teaching and the concept of spiral, and it is such a well-known concept. And so on the merits, there was substantial evidence. The appellant's arguments throughout their briefing appear to misapply the standard because the standard at this stage is substantial evidence. And they have to show that there was not substantial evidence to support the board. But the way they argue their briefing, they just want to point to the substantial evidence they think supports their side. In other words, they're trying to say if the board had gone with us, there would have been substantial evidence to affirm. But they don't really show the opposite. They don't show there wasn't substantial evidence to support. And that's apparent in some of the arguments they make. Now, I want to address one of their merits argument, which is about they try to claim that because our expert – they try to allege that our expert cited the wrong standard for a person with skill in the art. And what they've done is they take one sentence out of his report, out of context, and ascribe error to his entire obviousness analysis. And if you look at Mr. Smith's report, he says multiple times in appendix 591 to 92, he says, my understanding is a person of skill in the art will not know anything about the invention. It's from the perspective of somebody lacking knowledge of the invention and only having knowledge of the prior art up until the priority date. That's what he says. That was his standard. When he was trying to evaluate the level of ordinary skill – in other words, should it be a Ph.D., should it be someone with a bachelor's degree – the level of ordinary skill, that's a similar standard as developing the level of ordinary skill for 112, 103, claim construction. That's all the same. But when you're attributing knowledge to a person of ordinary skill in the art, that's when you draw the section 103 delineation of only knowledge in the prior art before the invention and without the invention. Your Honor, if the court has no more questions, I'm ready to sit down. No one ever loses points by not using up all of his time. Thank you, Your Honor. Mr. Hill has up to four minutes. Thank you, Your Honor. To begin with, I'd like to address some of the arguments with respect to the merits. In TQ Delta v. Cisco, this court talked about how a determination with respect to patentability is based on and confined to the reasoning from the board, the reasoning that the board relied upon. On page 26 of the board's opinion, Appendix 26, the board clearly states that it is looking at a very specific substitution. See these aperture is being substituted for Cronenberg's helical pathway. And the court gives the reason for that as they both perform the same function. That reasoning is incorrect. They do not perform the same function. Yes, the hole is part of a system that performs the function of separation. But that component does not perform a separation function. They are substituting one component from one system for one component from another system. And the board said you can do that because they function their functional equivalents. But they're not. That's not the point. If you're going to substitute systems, that would be one thing. You can take Cronenberg's separation system and substitute it, but you can't then get the claim language. So CV does not stand for the proposition that the aperture functions at all as a system. And that's what the board relied upon. And in reviewing the patentability, that's what this court is looking at is what does the board rely upon when they're looking at it. I would add that Mr. Smith's declaration speaks for itself. He attributed the knowledge of the invention to the person having ordinary skill in the art and to the point that the person having ordinary skill in the art was enabled by the disclosure in the 130 patent. With respect to merits again, the board's rationale for the combination is not only incorrect, it's insufficient on its face. As we've talked about, Cronenberg does mention that you can use an arcuate pathway in some respects. But in Column 3, it specifically limits the modifications that can be made with respect to Cronenberg. It says that you can substitute the helix, but then it still has to perform an essentially similar, it still has to achieve an essentially similar result. And when Pugin takes Cronenberg's structure and reconfigures it, changes some of the openings, it no longer performs the same function that it did in Cronenberg. Now it is a completely different structure. And that's why a person having ordinary skill in the art would not substitute it. What they never explain is why a person having ordinary skill in the art would be motivated to chop up Cronenberg and insert it in there. And the rationale they give that they perform the same function is incorrect. Forgive me, I would like to get into the appealability just a little bit, because the point is, it's a statutory requirement. 312A2 is still a statutory requirement. Under the argument from Pugin today, that decision will never be appealable. We're at a final decision here. That's the point of an appeal bar. Some decisions are left to the agency and are not appealable. Some decisions are left to the agency. But the Supreme Court and this court talked a lot about how an agency decision that is outside the scope of the statute is still appealable. That's the whole point of an appellate court. Not every one of them, though. Only ones that affect the final decision. And that's our precedent and WIFI 1 in other cases. So unless you can show – I'm sorry. You're over time. I don't need to take you over time to debate this. I'm sorry. Can I make just one more comment? In Worlds v. Bungie, the court said that the determination of real parties in interest under 312A2 is an important determination because it implicates 315B. So in Worlds v. Bungie, this court recognized the relationship between 315B and 312A. And that relationship is one of the basis for why it should be appealable at this stage as well. Thank you, counsel. Thank you, Your Honor. The case is submitted.